# Supreme Court Decisions.

## LAW OF DESCENT.

### McCammon et al v. Cooper, Trustee, et al.

69 Ohio State—Decided, January 5, 1904.

*A Ground Rent is a Freehold Estate, When—Such Right Descends According to Laws of Real Estate, When—Sections 4158, 4159 and 4163, Revised Statutes—Inheritance by Minor of Father's Land —Land Sold—Proceeds Invested in Ground Rent—Minor Dies Intestate and Without Issue—Law of Descent.*

1. A "ground rent" being an estate of inheritance in the rent of lands, is a freehold. estate, and is a right to and interest in the lands within the meaning of Section 4158, Revised Statutes, relating to descent and distribution.

2. Where the owner of such ground rent dies intestate and without issue, the right descends under the provisions of the sections of the Revised Statutes which control the descent of real estate, and is not within the purview of Section 4163, which relates to personal property.

3. Where a minor inherits from her father lands which came to him by deed of gift and the same are sold under the order of the probate court, and the proceeds invested in government bonds, and subsequently the bonds are sold and the proceeds invested in a ground rent, and afterwards that ground rent is redeemed and the proceeds invested in another ground rent, and the minor dies while the owner thereof, intestate and without issue, the estate will descend by virtue of Section 4159, Revised Statutes, to the next of kin of the deceased, and not to the heirs at law of the ancestor.

Error to the Circuit Court of Hamilton County.

In the year 1885 George McCammon died intestate, leaving an only child, Leora McCammon, an infant, and a widow, Ida Leora McCammon. He left a large personal estate, also real estate situate in Cincinnati, which descended to his daughter

869

Leora. All this he had derived by deed of gift from his father. In 1897 the guardian of Leora applied to the probate court of Hamilton for authority to sell certain of the real estate, under favor of Section 6280, Revised Statutes, on the ground that a better investment could be made in government bonds or ground rents. The court made the order prayed for directing the sale. The net proceeds amounted to $8,253.14. Prior to this the guardian had received $5,000, the proceeds of certain policies of fire insurance upon buildings belonging to his ward and inherited by her from her father. The·guardian invested this entire fund in government bonds, and subsequently sold the bonds, and in pursuance of the order of the probate court invested the proceeds, together with the proceeds of the real estate, in a ground rent. October 3, 1898, the guardian resigned, and the defendant in error, Harry L. Cooper, was by the probate court appointed trustee. The privilege of purchase being exercised as to the above named ground rent, $20,000, the proceeds were received by the trustee and that amount was thereupon by him reinvested in other ground rents.

Subsequently, in 1900, Leora McCammon died, aged fifteen, intestate and unmarried. The trustee settled his account in the probate court, and was ordered, on motion of the mother, now Ida Leora Olmstead, to convey to her the said real estate or ground rents in his name as trustee in fee simple, and to turn over to the administrator of Leora, deceased, the money and personal property in his hands. From this order plaintiffs in error, William McCammon, the brother of George McCammon, and John L. McCammon, the nephew of George McCammon, his only heirs at law, having theretofore appeared in the probate court to resist the motion, and having filed their claim to said two funds, $8,253.14 and $5,000, appealed the case to the court of common pleas. In that court, upon hearing, the same order was made as that of the probate court. The judgment was affirmed by the circuit court, and the McCammons bring error.

*Harlan Cleveland, John E. Bruce* and *Jacob H. Bromwell,* for plaintiffs in error.

*Judson Harmon* and *Harmon, Colston, Goldsmith & Hoadly,* for defendant in error.

SPEAR, J.; BURKET, C. J., DAVIS, SHAUCK, PRICE and CREW, JJ., concur.

The claim of plaintiffs in error is that the property inherited by Leora McCammon from her father having been ancestral property, and the plaintiffs in error being the only heirs at law of the ancestor, they are entitled, by force of our statute of descent and distribution, to the inheritance. Not that the precise estate which was owned by Leora McCammon, at her decease, came to her by inheritance, for without question it did not, but that property was purchased by the proceeds of the real estate which she did inherit, and which had been sold by her guardian; and that by applying the rule of equitable conversion, the funds derived from the sale continued during the life of Leora, in whatever form they were invested, to be impressed with the character of ancestral property for purposes of descent and distribution.

We think the proposition can not be maintained. It is conceded that under the authority of *Armstrong* v. *Miller,* 6 Ohio, 119, and *Pence* v. *Pence,* 11 Ohio St., 290, the proceeds of the sale of land would have become personal property, with all the incidents of such property as to distribution, in the event of the death of Leora, but for the act of March 18, 1890, which added a proviso to Section 4163, Revised Statutes (the section which directs the distribution of personal property), which proviso is:

"Provided, that any fund in the hands of any administrator, guardian, assignee or other trustee which has arisen from the sale of real estate, which real estate came to such intestate by descent, devise or deed of gift from an ancestor, shall descend according to the course of descent described by Section 4158 for ancestral real estate."

And the contention with respect to this proviso is that the term "any fund in the hands of any * * * —guardian * * * or other trustee" means the proceeds of the sale so long as held by the guardian or trustee under his trust and unexpended, into whatever form he may in fact change them by investment, thus seeking by construction to engraft upon our statute the equitable rule, enforced in many jurisdictions, that when for any reason the court changes the character of the property belonging to infants, it will not per-

mit the change to alter its devolution. The proposition, as applied to this case, is open to many answers. One is that the proviso, in its language and apparent intent, is dealing with present conditions. It does not deal with the past except that if the fund which then exists has arisen from the sale of ancestral real estate its evolution is controlled by this proviso. But the proviso can not be aided or enlarged by the application of any equitable rule. As held in *Patterson* v. *Lamson,* 45 Ohio St., 77, "the statutes of descent and distribution are not to be construed and administered upon equitable principles, but by rules of law," and in *Hutchings* v. *Davis,* 68 Ohio St., 160, "courts can not, by reason of any real or imagined equities limit, qualify or annul rights granted by legislative enactment." In other words, the General Assembly must be held to have intended to express its entire meaning by the natural import of the words used. The natural import of the term "fund which has arisen from the sale of real estate" implies a fund which has directly arisen from that source. The principle of *Brower* v. *Hunt,* 18 Ohio St., 311, is applicable here. It is there held that: "The title to real estate which must have come to an intestate by devise, or deed of gift from an ancestor, to constitute ancestral property, *is the title under which the intestate immediately* held." · Not that the word "directly" is found in this proviso, but neither was the word "immediately" found in the statute under review in the case above cited. If the intention had been by this proviso to give ancestral heirs any right to the proceeds of the sale of infants' real estate inherited from the ancestor, in any form it may be made to assume in the future, such intention would have been expressed in apt language. It is not, we think, reasonable to assume that the Legislature intended to go farther in the adoption of the doctrine of equitable conversion than the ordinary meaning of the words used imports.

But it seems hardly worth while to pursue this line further. Another answer fully covers the case. The proviso does not apply because the property in question was not a fund in the hands of the trustee. A fund is well defined as money or its equivalent gathered .for, or to be appropriated to a specific object. The property in controversy is not personal property of any kind; it is a right to real estate, and it isn't of conse-

quence what form the inheritance of the minor assumed from time to time after her father's decease and before her own. At the time of the latter event the inheritance had taken the form of real estate to which she had a right. And this applies as well to the insurance money as to the other; so that no different rule of law is involved. The descent of real esate as to which the owner dies intestate, is controlled by either Section 4158 or 4159, Revised Statutes, depending upon whether the estate thus left came to the deceased by descent, devise, or deed of gift, or by purchase. If by purchase, and that is the character of this estate, then the latter section controls, and the estate in controversy would under the fifth clause of that section, and by force of the ruling in *Armstrong* v. *Miller, supra,* and *Pence* v. *Pence, supra,* pass to the mother.

There is no error in the judgment of the circuit court affirming that of the common pleas, and it will be

*Affirmed.*